UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| KIMBERLY MORRIS, | ) |
| --- | --- |
| *Plaintiff*, | ) |
| | ) Case No. 1:09-cv-232 |
| v. | ) |
| | ) Judge Mattice |
| JOHNS MANVILLE INTERNATIONAL, INC., JOHNS MANVILLE, INC., and JOHNS MANVILLE CORPORATION, | ) |
| *Defendants*. | ) |

## **MEMORANDUM AND ORDER**

Before the Court is Defendant Johns Manville, Inc.'s Motion to Dismiss or in the Alternative, Motion for Summary Judgment [Court Doc. 8]. Defendants assert that all claims against them should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, Rule 56. Also before the Court is Plaintiff's Motion to Continue Pursuant to Federal Rule of Civil Procedure 56(f) [Court Doc. 11].

For the reasons explained below, Defendants' Motion to Dismiss or in the Alternative for Summary Judgment [Court Doc. 8] will be **GRANTED** and Plaintiff's Motion to Continue [Court Doc. 11] will be **DENIED AS MOOT**.

## I.     STANDARD OF REVIEW

As a preliminary matter, the Court notes that both parties have attached materials to their pleadings, principally consisting of a patent and its application and filings related to incorporation. *See, e.g.*, patent papers (Court Doc. 10, Pl.'s Respon. to Defs.' Mot. to Dismiss, Exs. A-B) and incorporation papers (Defs.' Mot. to Dismiss, Ex. A1-A6.) Though normally attaching materials outside the pleadings to a motion to dismiss requires the

Court to convert it to one for summary judgment, courts may consider, without converting the motion to one for summary judgment: "public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies." *Id*. (citing *Jackson v. City of Columbus*, 194 F.3d 737 (6th Cir. 1999). Thus, the attachment of these particular materials to the pleadings does not require the Court to convert the motion, and although there would be no unfair surprise in doing so, as the motion was styled as a motion to dismiss, or, in the alternative, as a motion for summary judgment, the matter can be disposed of as a motion to dismiss. Therefore, the Court will treat the motion presently before it as one to dismiss without converting it to one for summary judgment.

Federal Rule of Civil Procedure 12(b)(6) provides an affirmative defense for a party's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). This defense is typically asserted as a motion to dismiss, where the movant challenges the sufficiency of claims set forth in a complaint. In *Ashcroft v. Iqbal*, the Supreme Court of the United States expanded on the holding in *Bell Atl. Corp. v. Twombly* by stating that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court clarified this statement by outlining the two "working principles" governing a motion to dismiss. *Id*. First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Instead, a court considering a motion to dismiss should only accept that all factual allegations are true. Accordingly, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 1950.

The second principle outlined in *Iqbal* is that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556). The reviewing court must determine not whether the plaintiff will ultimately prevail but whether there is "more than the mere possibility of misconduct," which is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. Therefore, to survive a motion to dismiss under 12(b)(6), a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Assoc. of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 555).

Plaintiff has also filed a motion pursuant to Rule 56(f) for a continuance of the instant motion to allow for additional discovery on the issues of the relationship between Johns Manville International, Inc. Johns Manville, Inc., and Johns Manville Corporation, and their marketing and development of the "chopper." Federal Rule of Civil Procedure 56(f) permits a court to allow discovery prior to ruling on a motion for summary judgment if "it appear[s] from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition . . . ." Fed. R. Civ. P. 56(f). Rule 56(f) has been interpreted to require that the moving party indicate "its need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information." *Gettings v. Bldg. Laborers Local 310*, 349 F.3d

300, 305 (6th Cir. 2003); *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000). To meet this standard, the party must file an affidavit or detailed motion, *Plott v. General Motors Corp.,* 71 F.3d 1190, 1196 (6th Cir. 1995), in which it must present something more than general and conclusory statements. *Ball v. Union Carbide Corp.*, 385 F.3d 713, 720 (6th Cir. 2004). Thus, while there is no absolute right to additional time for discovery, if the party seeking additional time presents an affidavit that meets the requirements of Rule 56(f), the Court should allow time for discovery.

Rule 56(f) is not, however, "a shield that can be raised to block a motion for summary judgment without even the slightest showing by the opposing party that his opposition is meritorious." *Emmons*, 874 F.2d at 356 (quoting *Willmar Poultry Co. v. Morton-Norwich Prods, Inc.*, 520 F.2d 289, 297 (8th Cir. 1975)). Thus, "[w]here . . . a party fails to carry his burden under Rule 56(f), postponement of a ruling on a motion for summary judgment is unjustified." *Id*. at 356-57 (quoting *Willmar Poultry*, 520 F.2d at 297).

## II. PROCEDURAL AND FACTUAL BACKGROUND

Viewing the complaint in the light most favorable to Plaintiff and accepting as true all well-pleaded factual allegations, the relevant facts are as follows.

Plaintiff Kimberly Morris is a resident of Tennessee, and Defendants Johns Manville International, Inc., Johns Manville, Inc., and Johns Manville Corporation are corporations with a principal place of business in Colorado, but qualified to do and doing business in Tennessee. (Court Doc. 1, Compl. ¶¶1-2.) Plaintiff was employed by Defendant Johns Manville Corporation at its Etowah, Tennessee plant, in a job that required her to use a "chopper," a machine that cuts strands of fiber continuously. (*Id.*, ¶5.) On August 30, 2008,

while using the chopper, Plaintiff's hand was trapped inside the chopper, causing her hand to have to be amputated, with only her thumb remaining (*Id.*) Johns Manville International, Inc. was the developer, seller, and manufacturer of the chopper, and Plaintiff alleges that it had a defective design and was unreasonably unsafe for normal, anticipated use. (*Id.*, ¶6.)

Plaintiff argues that Defendant Johns Manville International, Inc. has a separate corporate identity from that of her employer, Johns Manville, Inc./Johns Manville Corporation. (*Id.*, ¶10.) Plaintiff also argues, in the alternative, that if the Court finds that all the Defendants are a single corporate entity, that they are liable to her under the "dual capacity doctrine," i.e., that in this instance the corporation was acting in two separate capacities–her employer and the manufacturer of this machine. (*Id.*, ¶11.)

Defendants note, and Plaintiff does not dispute, that Plaintiff is currently receiving workers' compensation benefits for the injuries she sustained in the event that is the gravamen of this complaint. (Court Doc. 9, Mem. in Supp. of Defs.' Mot. to Dismiss, 3; Court Doc. 10, Pls.' Respon. to Defs.' Mot. to Dismiss, 3.) Defendants argue that Tennessee's Workers' Compensation Law forecloses all other rights and remedies of the employee as against the employer, and that Tennessee has already rejected Plaintiff's "dual capacity argument." (Defs.' Mem., 3.) Finally, Defendants argue that Plaintiff's arguments regarding the separate corporate identities of her employer and the manufacturer of the device are clearly contradicted by the public incorporation papers, which clearly show that the various entities Plaintiff is suing are all simply different names for the same corporate entity. (*Id.*, 3-4; Defs.' Mot. to Dismiss, Ex. A1-A6.)

## III. ANALYSIS

This case presents two issues: (1) whether, in light of Defendants' submissions regarding its corporate history, Plaintiff's allegations support a facially plausible claim that the corporation that designed, marketed, and manufactured the chopper, Johns Manville International, is a separate corporate entity from Johns Manville, Inc./Johns Manville Corporation, Plaintiff's employer; and (2) whether Tennessee's Workers' Compensation Law allows employees to sue employers who are allegedly liable for their injuries in more than one role, pursuant to the "dual capacity" theory.

### A. Defendants' Corporate Identities

First, Plaintiff argues that "[a]t the time the chopper was developed and sold Johns Manville International was a separate corporate identity from Mrs. Morris' employer and thus the exclusivity provisions of the Tennessee Workman's Compensation Law do not apply to these facts. Johns Manville International, Inc. at the time of the manufacture and sale of this product was a separate corporate entity which was not the employer of Mrs. Morris." (Compl., ¶10.) Despite this allegation, however, Plaintiff does not identify Johns Manville International, Inc. as a separate party with a separate principal place of business from Defendants Johns Manville, Inc. and Johns Manville Corporation, in the "Parties" section of her complaint, except to say that the latter two are referred to by her as "Johns Manville." (*Id.*, 2.)

Defendants argue that the only causes of action asserted in the complaint are product liability actions against Johns Manville International, Inc. (Defs.' Mem., 2.) Defendants argue that Plaintiff's employer, which currently goes by the name Johns

Manville, Inc., used the name Johns Manville International, Inc. from 1997-2002, but is the same company as Plaintiff's employer at the time of the accident, having simply changed its name in 2002. (Defs.' Mem., 2-3.) In their "Statement of Undisputed Facts" in their Memorandum in Support of their Motion to Dismiss, Defendants outline the entire corporate history of their company, from its incorporation in Delaware in 1929 to the present day and including its Tennessee corporate records. (*Id.*, 2-3.) They attach to their Motion to Dismiss the filings demonstrating their corporate history. (Defs.' Mot. to Dismiss, Ex. A1-A6.)

Defendant's "Statement of Undisputed Facts" presents the corporate history as follows:

1. In 1929, a Certificate of Incorporation was issued in the State of Delaware creating the Johns-Manville Sales Corporation. (Motion to Dismiss Ex. A3)

2. In 1985, a Certificate of Agreement and Merger filed in the State of Delaware merged Johns-Manville Sales Corporation with other entities to create Manville Sales Corporation. (Motion to Dismiss Ex. A4)

3. On February 7, 1992, a resolution was filed with the State of Delaware, in which the Certificate of Incorporation of Manville Sales Corporation was amended to change the name of the corporation to Schuller International, Inc. (Motion to Dismiss Ex. A5)

4. In 1997, the name of Schuller International Inc. was changed to Johns Manville International, Inc. (Motion to Dismiss Ex. A6)

5. In January of 2002, the Certificate of Incorporation of Johns Manville International, Inc. was amended to change the corporation's name from Johns Manville International, Inc. to Johns Manville. (Motion to Dismiss Ex. A1)

> 6. The 2002 Application for Amended Certificate of Authority filed with the state of Tennessee reflects that the name of Johns Manville International, Inc. was changed to Johns Manville, Inc. (Motion to Dismiss Ex. A2)
>
> 7. The plaintiff's employer Johns Manville, Inc. is the same corporate entity as Johns Manville International, Inc. (Motion to Dismiss Ex. A)
>
> 8. The plaintiff was injured while using equipment manufactured by her employer. (Compl.; Motion to Dismiss Ex. A.)

(Defs.' Mem., 2-3.) In response to this, Plaintiff asserts that "[she] does not concede Defendant's statement of alleged undisputed facts number 7 and 8." (Pl.'s Resp., 3.) She does not object to the facts 1-6 and does not assert why she does not concede 7 and 8, except to say that she "believes that facts exist which will prove that JMI existed separate and apart from [her] employer and that the product was patented to be marketed and sold by JMI." (*Id.*, 4.)

All the evidence in the public records provided by Defendants demonstrates that Johns Manville International, Inc. is the same corporate entity as the extant Johns Manville, Inc. As noted above, Plaintiff does not provide any address for service of an extant corporation by the name of Johns Manville International, Inc., and her sole allegation on this issue – that she "believes that facts exist which will prove that JMI existed separate and apart from [her] employer" – is precisely the type of conclusory statement the Supreme Court rejected in *Iqbal*. This is especially true where Plaintiff seems to accept all of Defendants' statements about its corporate naming history and objects solely to the ineluctable conclusions that derive from them, i.e., that the corporation has remained the same corporate entity since its creation in 1929, with a few name changes during that time.

Further, the applicable Tennessee law also supports this conclusion: "a mere change of name in an existing corporation, either simply or by way of consolidation with other companies, would not affect the liabilities of a corporation." *Memphis Water Company v. Magens & Co.*, 83 Tenn. 37, 43 (1885) (citation omitted); *see also Cont'l Bankers Life Ins. Co. of the South v. Simmons*, 561 S.W.2d 460, 464 n.2 (Tenn. Ct. App. 1977)("Once corporate existence has begun, even though, . . . the stockholders, directors, and corporate name may change, the corporation retains the same rights, liabilities, and responsibilities until dissolved.")

The record is clear, and Plaintiff does not dispute the *facts* showing that Defendant Johns Manville International, Inc., the chopper's manufacturer, became her employer, Defendant Johns Manville, Inc., by virtue of the name change recorded with the Tennessee Department of State on July 29, 2002. Therefore, the Court finds that Defendants Johns Manville International, Inc., Johns Manville, Inc., and Johns Manville Corporation are all the same corporate entity, hereinafter referred to by its current Tennessee name of Johns Manville, Inc.

Finally, it is important to note that the corporate name change does not matter for purposes of Tennessee's Workers' Compensation Law, and even if these corporations were found to be separate entities, they still would all likely be her "employer" for purposes of the same law. There are numerous Workers' Compensation cases in which the corporate entity originally sued changed its name during the claim, with no effect on the court's opinion or the action generally. *See, e.g., Taff v. Media Gen. Broad. Serv., Inc.*, 1986 WL 12240, *1 (Tenn. App. Nov. 3, 1986). In addition, courts have also found that parent/subsidiary corporations, "companion" corporations, and predecessor/successor

corporations were all "employers" for various purposes under the Workers' Compensation laws. *See, e.g.*, *Stigall v. Wickes Machinery, a Div. of Wickes Corp.*, 801 S.W.2d 507 (Tenn. 1990) (the parent corporation was deemed to be an employer of the employee of the subsidiary corporation and immune from liability by virtue of the exclusive remedy provision); *Cox v. Martin Marietta Energy Sys.*, 832 S.W.2d 534, 534-535 (Tenn. 1992) (Plaintiff originally worked for Union Carbide Corporation, predecessor to his employer at the time of the suit, Martin Marietta Energy Systems); *Dunn v. Sequatchie Concrete Srvc., Inc.*, 1997 WL 243526 (Tenn. 1997) (statute of limitations was tolled by service on "companion" corporation of employee's actual employer); *Harper v. Lockheed Martin Energy Sys., Inc.*, 2000 WL 1286439 ( Tenn. Workers' Comp. App. Panel of Tenn. S. Ct., Sept. 12, 2000) (affirming judgment of the trial court because the new employer was a successor of or substitute for the original employer by reason of a change of contractors).[1]

Therefore, the Court finds that Plaintiff has failed to allege a sufficiently plausible claim that Defendants Johns Manville International, Inc., Johns Manville, Inc., and Johns Manville Corporation are separate corporate entities such that the Johns Manville International, Inc. that designed, manufactured, and marketed the chopper was not the same corporate entity that was her employer for purposes of Tennessee's Workers' Compensation Law.

---

[1] The only situation in which a corporate change of the employee's employer seems to matter is where the "purchase of a pre-injury employer by another corporate entity was a 'loss of employment' for purposes of section 50-6-241, which triggered the one year period to petition for reconsideration of a capped settlement or award," a situation and provision inapposite to this case. *Perrin v. Gaylord Entm't. Co.*, 120 S.W.3d 823, 827 (Tenn. 2003), *superseded on other grounds by statute*, Tenn. Pub. Ch. 264 amending Tenn. Code Ann. § 50-6-241, as recognized in *Meeks v. Hartford Ins. Co. of Midwest*, 2010 WL 3398835, *2 (Tenn. Workers Comp. App. Panel of Tenn. S. Ct., Aug 30, 2010).

### B. Plaintiff's "Dual Capacity" Theory

There is no allegation that Plaintiff and Defendants are not subject to Tennessee's Worker's Compensation Law as outlined in Tenn. Code Ann. § 50-6-101, et seq., and Plaintiff is currently receiving workers' compensation benefits for the injuries she sustained in the accident that forms the basis of this complaint. (Court Doc. 9, Mem. in Supp. of Defs.' Mot. to Dismiss, 3; Court Doc. 10, Pls.' Respon. to Defs.' Mot. to Dismiss, 3.) Tennessee's Workers' Compensation Law clearly provides that: "[t]he rights and remedies granted to an employee subject to this chapter, on account of personal injury or death by accident . . . shall exclude all other rights and remedies of the employee . . . at common law or otherwise, on account of the injury or death." Tenn. Code Ann. § 50-6-108(a). Plaintiff attempts to argue that, in this case, the employer was acting in a "dual capacity," both as employer and as manufacturer of the chopper, and that since she would be able to sue a third party who had created the chopper under a product liability theory, she should be able to bring the same claim against Defendants.

Tennessee has squarely rejected this theory:

> Nothing in [the law] may be construed to evince a legislative intent that an employer may ever be classified as a "third person", without doing violence to the plain language which permits common law suits against "some person other than the employer". The employer is the employer; not some person other than the employer. It is that simple. The injured workman is confined to the benefits provided by the Workmen's Compensation Act and may not sue his employer in tort.

*McAlister v. Methodist Hospital of Memphis*, 550 S.W.2d 240, 246 (Tenn. 1977). The only exception to the exclusive remedy provision is where the employee can prove that the employer had actual intent to injure the employee, and even then, "proof of gross

negligence or even criminal negligence is not sufficient to establish the requisite and actual intent to injure that allows an employee to maintain a common law action against his employer." *Gonzales v. Alman Const. Co.*, 857 S.W.2d 42, 46 (Tenn. App. 1993) (citing *Mize v. Conagra, Inc.*, 734 S.W.2d 334, 336 (Tenn. App. 1987)); *see also*, V*alencia v. Freeland & Lemm Const. Co.*, 108 S.W.3d 239, 243 (Tenn. 2003).

Therefore, because Plaintiff has failed to allege a sufficiently plausible claim that Defendants Johns Manville International, Johns Manville, Inc., and Johns Manville Corporation are separate corporate entities, and because Plaintiff's exclusive remedy against her employer is through the Workers' Compensation Law, Plaintiff's claims against Defendants fail to state a claim upon which relief can be granted and will be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

### C. Plaintiff's Motion for a Continuance Pursuant to Fed. R. Civ. P. 56(f)

Because Plaintiff has failed to state a claim upon which relief can be granted, no amount of discovery could produce facts that would prevent the dismissal of Plaintiff's claims. Therefore, the motion for a continuance will be denied as moot.

## IV. CONCLUSION

For the reasons set forth herein, Defendants' Motion to Dismiss or in the Alternative, Motion for Summary Judgment [Court Doc. 8] will be **GRANTED**, and Plaintiff's Motion to Continue Pursuant to Federal Rule of Civil Procedure 56(f) [Court Doc. 11] will be **DENIED AS MOOT**. Plaintiff's claims against Defendants are **DISMISSED WITHOUT PREJUDICE**.

SO ORDERED this 24th day of September, 2010.

                                                       */s/Harry S. Mattice, Jr.*
                                           HARRY S. MATTICE, JR.
                                   UNITED STATES DISTRICT JUDGE